[Cite as *In re M.M.*, 2022-Ohio-1582.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|                |   | JUDGES:                      |
|----------------|---|------------------------------|
| IN RE: M.M.    | : | Hon. W. Scott Gwin, P.J.     |
|                | : | Hon. William B. Hoffman, J.  |
|                | : | Hon. John W. Wise, J.        |
|                | : |                              |
|                | : |                              |
|                | : | Case No. 2021CA00156         |
|                | : |                              |
|                | : |                              |
|                | : | OPINION                      |


CHARACTER OF PROCEEDING:      Civil appeal from the Stark County Court of
                              Common Pleas, Family Court Division,
                              Case No. 2020 JCV00306


JUDGMENT:                     Affirmed


DATE OF JUDGMENT ENTRY:       May 11, 2022


APPEARANCES:

For - Appellee                        For - Appellant

BRANDON J. WALTENBAUGH                TY GRAHAM
Stark County JFS                      4450 Belden Village St. N.W.
402 2nd St. SE                        Suite 703
Canton, OH 44702                      Canton, OH  44718

*Gwin, P.J.*

{¶1} Appellant-mother, R.M. ["Mother"] appeals the December 6, 2021 Judgment Entry of the Stark County Court of Common Pleas, Family Court Division, which terminated her parental rights with respect to her minor child M.M. (b. Mar 24, 2020) and granted permanent custody of the child to appellee, Stark County Department of Jobs and Family Services ("SCDJFS").[1]

*Facts and Procedural History*

{¶2} Mother[2] is the biological mother of M.M. b. Mar. 24, 2020. The case involving M.M. was commenced March 26, 2020 with the filing of a complaint alleging dependency and/or neglect. On May 20, 2020, the trial court found M.M. to be a dependent child and placed him into the temporary custody of SCDJFS.

{¶3} The allegations of the complaint concerned Mother's lengthy history with children services agencies across the country, concerns about her criminal history, parenting practices, and mental health, as well as Mother having a pending case in Tuscarawas County regarding three other children. 1T. at 53.[3]

{¶4} Case plan objectives for Mother included obtain a psychological evaluation, participate in Dialectical Behavior Therapy ("DBT"), anger management, Goodwill Parenting, individual counseling, and have a medication consultation. 1T. at 57.

{¶5} On December 23, 2020, Mother filed a motion for immediate review. 1T. at 55. Specifically, Mother wanted to change counselors, change the provider of her

---

[1] For the Father's appeal see, *In re M.M.*, 5th District Stark No. 2021CA00159. The instant appeal focuses upon those facts relevant to Mother's efforts to challenge the motion for permanent custody.

[2] See, OH ST Supp. R. 44(H) and 45(D) concerning the use of personal identifiers.

[3] For clarity, the transcript of the Permanent Custody hearing that took place in the trial court on August 5, 2021 will be referred to as "__T.__, signifying the volume and the page number.

parenting program, and/or because Goodwill Parenting was required by SCDJFS as part of her case plan to re-enroll in that program. 1T. at 24; 36. The first time that Mother had attended the Goodwill program a mutual decision was made to end the classes because Mother was pregnant with M.M. 1T. at 36. SCDJFS only paid the program for the days Mother attended. Id. SCDJFS only paid Mother to go to Goodwill once on a full-time basis and then a short time before the parties agreed to end Mother's participation due to her pregnancy. Id. SCDJFS refused to pay for Mother to attend Goodwill Parenting again even though it was a requirement of the Case Plan, and required that Mother pay for the program herself. 1T. at 36. A hearing took place on January 6, 2021, wherein the trial court overruled Mother's requests. Specifically, the trial court found that Mother had already changed service providers multiple times throughout the case including, but not limited to, counselors, psychological assessors, and parenting class providers, and that more changes were not warranted. *Judgement Entry*, filed Jan. 7, 2021. (Docket No. 64).

{¶6} On February 9, 2021, SCDJFS filed a motion seeking permanent custody of the child. Mother filed a Motion on April 15, 2021 asking the Court to return the child or in the alterative, extend temporary custody. (Docket No. 95). On April 15, 2021, Mother filed a Motion to grant custody to her sister Jimilah Lundy. (Docket No. 94). Mother's motions were set for hearing at the same time as the hearing on the permanent custody motion. *Findings of Fact and Conclusions of Law,* filed Dec. 6, 2021 at 33.

{¶7} The Father of the child filed a Motion requesting that this matter be transferred to Tuscarawas County. The Court granted that Motion with an Order filed on

April 19, 2021.  However, on May 12, 2021, the Court vacated that Entry.  Permanent custody proceedings were set for August 5, 2021.

{¶8}    The following evidence was presented during the hearing.

### Mother's case plan.

{¶9}    The initial concerns leading to the Tuscarawas County Children Service's involvement with Mother's three other children were Mother's criminal history, homelessness, mental health, and Mother's medication compliance.  1T. at 8-9.  On August 28, 2019, Mother's three children were removed from her custody and placed in the temporary custody of Tuscarawas County Children Services.  1T. at 11.  Tuscarawas County implemented a case plan consisting of a psychological evaluation conducted by Dr. Aimee Thomas at Lighthouse, Goodwill Parenting classes, stable housing and income, individual counseling, a substance abuse assessment, medication compliance, and no criminal conduct.  Id. at 15.

{¶10}  The parties agreed that Mother secured stable housing and reliable income through Social Security and has consistently maintained both through the course of the case.  1T. at 49; 51; 89.

{¶11}  Mother successfully completed her drug assessment and treatment.  1T. at 51; *Findings of Fact and Conclusions of Law,* filed Dec. 6, 2021 at 16.

### Mother's mental health evaluation

{¶12} Dr. Aimee Thomas a psychologist and Licensed Professional Clinical Counselor for Lighthouse Family Center met with Mother and completed Mother's

parenting evaluation report on January 13, 2020. 1T. at 85; Exhibit 4[4]; *Findings of Fact and Conclusions of Law,* filed Dec. 6, 2021 at 43.

{¶13} Mother reported to Dr. Thomas that Mother has nine children, none of which is in Mother's care. 1T. at 86. The children either were removed from Mother's custody by children services agencies or were placed with family members.

{¶14} Mother reported that the Director of Tuscarawas County Family Services was a demon. 1T. at 87. Mother showed Dr. Thomas a picture of the director dressed in a Halloween costume, and reported that she was sure the Director was trafficking in children. The director of Tuscarawas County Job and Family Services obtained a civil protection order against Mother during the pendency of the case in Tuscarawas County. (See SCDJFS Exhibit 1).

{¶15} Dr. Thomas noted that Mother had been exposed to "exceptionally poor parental role modeling" which has significantly affected Mother's mental health. 1T. at 88. Dr. Thomas testified that Mother disclosed significant criminal history, including selling drugs, prostitution, and ten domestic violence convictions. Dr. Thomas testified that Mother was not receptive to using medication to address her mental health issues.

{¶16} Dr. Thomas diagnosed Mother with bipolar disorder with psychosis, post-traumatic stress disorder, cannabis use disorder in remission, stimulant use disorder in remission, other specified personality disorder with borderline paranoia and anti- social

---

[4] Actually, Mother completed two (2) assessments in this case. Dr. Thomas completed the first assessment. This first assessment was a parenting assessment. (SCDJFS Exhibit 4). Dr. Dean completed the second assessment. The second assessment, which was a psychological assessment, occurred at Mother's request. (SCDJFS Exhibit 2) Dr. Dean did not testify during the permanent custody proceedings. Both assessments resulted in similar conclusions for Mother. *Findings of Fact and Conclusions of Law,* filed Dec. 6, 2021 at 43.

traits.  1T. at 92.  Dr. Thomas opined that unless Mother is stable and taking care of herself, she will be unable to meet the child's needs.  1T. at 93.

{¶17}  Dr. Thomas recommended,

Mother, participate in comprehensive mental health treatment services.  Um, specifically dialectical behavioral therapy um that focused on coping skills.  It was evident that she needed additional support with managing her emotions.  I recommended that she participate in a psychiatric evaluation.  Um, in my opinion based on the severity of her mental health symptoms including the paranoid delusions, she really needed medication to stabilize her.  Um, I recommended that she submit urine screens due to her historic use of marijuana and cocaine to ensure that she is sober.  Um, there were concerns that she had money um that it appeared in excess of Social Security benefits.  So I recommended the agency Tuscarawas County ascertain how she is able to um provide for the family with this extra money.  I recommended she participate in anger management treatment.  Um, I recommended that before she participates in Goodwill Parenting that she is stabilize in psychotropic medications.

1T. at 93.  Dr. Thomas opined that Mother's frequent attempts to change mental health counselors,

Well it reflects this desire to have people tell her what she wants to hear versus what she needs to hear.  And had the first one or two therapists perhaps held her accountable and encouraged her with psychotropic treatment, perhaps we wouldn't be here, perhaps she could have got the

help she needed but in my opinion the therapy was only, would have minimal use until she stabilized on medications.

1T. at 95.

## Mother's interaction with the child.

**{¶18}** Jennifer Grice the ongoing caseworker for SCDJFS testified that Mother moved to Stark County and gave birth to M.M. during the case with Tuscarawas County Children Services regarding other children.

**{¶19}** Ms. Grice testified that Mother would often bring food to her visits with M.M. that was too big and created a potential choking hazard. 1T. at 65. Mother would yank the child on the arms to pick the child up. 1T. at 65-66. Further, Mother would become distracted and not notice safety issues. Id. at 66.

## Mother's counseling

**{¶20}** Mother has engaged in individual counseling with Mark Welty in September of 2019; Anne Myers at Village Network from May 2020 until November 2020; Dr. Baker in Cincinnati from November 2020 to February 2021; Rebecca Watkins at Healing Place from February 2021 to March 2021; and Ms. Logan from March 2021 to present. Father was in counseling with David Marsh in September 2019 and at Village Network from May 2020 to November 2020. 1T. at 17-19.

**{¶21}** Mother reported that Anne Meyers was "an amateur and that she didn't know what she was doing." 1T. at 60. Mother did not sign releases for SCDJFS to receive information from her mental health counselors. 1T. at 63.

**{¶22}** Anne Myers testified that there was progress with the parties in couples' therapy. 1T. at 118. However, Ms. Myers testified that Mother and Father did not reach

any of their individual therapeutic goals.  1T. at 114-117.  Ms. Myers testified that the Mother and the Father did not reach any goals in couples counseling.  Id. at 117.

{¶23}  Rebecca Watkins from The Healing Place has been a counselor for thirteen years and has been seeing Mother for 15 weeks.  2T. at 200-201.  Mrs. Watkins provides the Mother with DBT therapy that was recommended by Dr. Thomas.  Id. at 200.  Mrs. Watkins testified that she believes Mother is making progress with the DBT counseling. 2T. at 201-202.

## Relative Placement

{¶24}  Jimilah Lundy, Mother's sister, testified that she had contact with both the Tuscarawas County Children Services and the SCDJFS.  1T. at 187.  Ms. Lundy is employed with the IRS and resides in a two-bedroom apartment located in Bartlett, Tennessee.  Id. at 184-185.  She testified that she has no criminal history.  She further explained that she had one of her children at the age of fourteen and the other at the age of fifteen.  She informed the court that children services in Nevada became involved when she had her children due to her age when she became a mother, but she raised both of her children to the age of adulthood.  Ms. Lundy testified that she was willing to take custody of M.M. and follow any orders the court deems necessary.  She testified that she spoke with the SCDJFS caseworker about her desire to take custody of M.M., but the caseworker never got back to her as she had promised.

{¶25}  Jamie Grunder testified that she never spoke to Ms. Lundy, and never considered her for placement of M.M.  1T. at 32; 41-42.

**Recommendations**

{¶26} On July 29, 2021, the Guardian ad Litem for the child filed her final report, recommending that SCDJFS be granted permanent custody of the child.

{¶27} Ms. Grice testified that Mother had not made progress in her case plan, and that the child would be at imminent risk of harm if returned to Mother's custody. Ms. Grice testified that she did not believe an extension of the case would change her recommendation that permanent custody be granted. 1T. at 73.

**Entry granting permanent custody**

{¶28} The trial court overruled Mother's motion to extend temporary custody and Mother's motion for legal custody to the maternal Aunt Jimilah Lundy.

{¶29} The trial court found Mother and Father have had parental rights involuntarily terminated with respect to a sibling of M.M. pursuant to section 2151.414 or section or section 2151.353 or 2151.415 of the Revised Code, and both Mother and Father have failed to provide clear and convincing evidence to prove that, notwithstanding the prior termination, Mother and/or Father can provide a legally secure permanent placement and adequate care for the health, welfare, and safety of M.M.

{¶30} The Court found by clear and convincing evidence that the child cannot be placed with either parent within a reasonable period, and should not be placed with such parents pursuant to R.C. 2151.414 specifically citing the parents' failure to remedy the problems that initially caused the child to be placed outside the home.

{¶31} The trial court further found that despite the minimal bond that may have developed between any parent and M.M., the harm caused by severing the bond with the parents is outweighed by the benefits of permanency in the child's life. The trial court

concluded it is in the best interest of M.M. to grant Permanent Custody to SCDJFS for purposes of adoption.  M.M. deserves to be in a stable, loving environment.

**Assignments of Error**

{¶32}  Mother appeals raising two Assignments of Error,

{¶33}  "I. THE TRIAL COURT'S JUDGMENT THAT M.M. CANNOT BE PLACED WITH APPELLANT WITHIN A REASONABLE PERIOD OF TIME WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE.

{¶34}  "II. THE TRIAL COURT'S JUDGMENT THAT THE BEST INTERESTS OF THE MINOR CHILD WOULD BE SERVED BY GRANTING PERMANENT CUSTODY WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE."

I & II

**Standard of Appellate Review**

{¶35}  "[T]he right to raise a child is an 'essential' and 'basic' civil right."  *In re Murray*, 52 Ohio St.3d 155, 157, 556 N.E.2d 1169(1990), *quoting Stanley v. Illinois*, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551(1972).  A parent's interest in the care, custody, and management of his or her child is "fundamental."  Id.; *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599(1982).  The permanent termination of a parent's rights has been described as, "* * * the family law equivalent to the death penalty in a criminal case."  *In re Smith,* 77 Ohio App.3d 1, 16, 601 N.E.2d 45(6th Dist. 1991).  Therefore, parents "must be afforded every procedural and substantive protection the law allows."  Id. An award of permanent custody must be based upon clear and convincing evidence.  R.C. 2151.414(B)(1).

**{¶36}** The Ohio Supreme Court has delineated our standard of review as follows, "clear and convincing evidence" is "[t]he measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal." *In re Estate of Haynes*, 25 Ohio St.3d 101, 103-104, 495 N.E.2d 23 (1986). In *Cross v. Ledford,* 161 Ohio St. 469, 477, 120 N.E. 2d 118 (1954), the Supreme Court further cautioned,

> The mere number of witnesses, who may support a claim of one or the other of the parties to an action, is not to be taken as a basis for resolving disputed facts. The degree of proof required is determined by the impression which the testimony of the witnesses makes upon the trier of facts, and the character of the testimony itself. Credibility, intelligence, freedom from bias or prejudice, opportunity to be informed, the disposition to tell the truth or otherwise, and the probability or improbability of the statements made, are all tests of testimonial value. *Where the evidence is in conflict, the trier of facts may determine what should be accepted as the truth and what should be rejected as false.* See *Rice v. City of Cleveland*, 114 Ohio St. 299, 58 N.E.2d 768.

161 Ohio St. at 477-478. (Emphasis added). A court of appeals will affirm the trial court's findings "if the record contains competent, credible evidence by which the court could have formed a firm belief or conviction that the essential statutory elements for a

termination of parental rights have been established." *In re Adkins,* 5th Dist. Nos. 2005AP06–0044 and 2005AP07–0049, 2006-Ohio-431, 2006 WL 242557, ¶17.

## Requirements for Permanent Custody Awards

{¶37} R.C. 2151.414 sets forth the guidelines a trial court must follow when deciding a motion for permanent custody. R.C. 2151.414(A)(1) mandates the trial court schedule a hearing and provide notice upon filing of a motion for permanent custody of a child by a public children services agency or private child placing agency that has temporary custody of the child or has placed the child in long-term foster care.

{¶38} Following the hearing, R.C. 2151.414(B) authorizes the juvenile court to grant permanent custody of the child to the public or private agency if the court determines, by clear and convincing evidence, it is in the best interest of the child to grant permanent custody to the agency, and that any of the following apply:

(a) The child is not abandoned or orphaned, has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period if, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents;

(b) the child is abandoned;

(c) the child is orphaned and there are no relatives of the child who are able to take permanent custody; or

(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state.

**{¶39}** Therefore, R.C. 2151.414(B) establishes a two-pronged analysis the trial court must apply when ruling on a motion for permanent custody. In practice, the trial court will usually determine whether one of the four circumstances delineated in R.C. 2151.414(B)(1)(a) through (d) is present before proceeding to a determination regarding the best interest of the child.

**Parental Placement within a Reasonable Time– R.C. 2151.414(B)(1)(a).**

**{¶40}** The court must consider all relevant evidence before determining the child cannot be placed with either parent within a reasonable time or should not be placed with the parents. R.C. 2151.414(E). The statute also indicates that if the court makes a finding under R.C. 2151.414(E)(1)-(15), the court shall determine the children cannot or should not be placed with the parent. A trial court may base its decision that a child cannot be placed with a parent within a reasonable time or should not be placed with a parent upon

the existence of any one of the R.C. 2151.414(E) factors.  The existence of one factor alone will support a finding that the child cannot be placed with the parent within a reasonable time.  *See In re William S.*, 75 Ohio St.3d 95, 1996–Ohio–182, 661 N.E.2d 738; *In re Hurlow*, 4th Dist. Gallia No. 98 CA 6, 1997 WL 701328 (Sept. 21, 1998); *In re Butcher*, 4th Dist. Athens No. 1470, 1991 WL 62145(Apr. 10, 1991).

{¶41}   R.C. 2151.414(E) sets forth factors a trial court is to consider in determining whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents.  Specifically, Section (E) provides, in pertinent part, as follows:

(E) In determining at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence.  If the court determines, by clear and convincing evidence, at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:

(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child

to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home.  In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for changing parental conduct to allow them to resume and maintain parental duties.

(2) Chronic mental illness, chronic emotional illness, intellectual disability, physical disability, or chemical dependency of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year after the court holds the hearing pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code;

\* \* \*

(11) The parent has had parental rights involuntarily terminated with respect to a sibling of the child pursuant to this section or section 2151.353 or 2151.415 of the Revised Code, or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to those sections, and the parent has failed to provide clear and convincing evidence to prove that, notwithstanding the prior termination, the parent can

provide a legally secure permanent placement and adequate care for the health, welfare, and safety of the child.

* * *

(16) Any other factor the court considers relevant.

**{¶42}** As set forth above, the trial court's findings are based upon competent credible evidence. The record includes the recommendation of the guardian ad litem for the child, and the testimony of the witnesses at trial. The trial court was in the best position to determine the credibility of the witnesses.

**{¶43}** In the instant case, the trial court did not explicitly cite to a single factor in R.C. 2151.414(E). However, the detailed findings in the December 6, 2021 Judgment Entry and the entire record in this matter make it apparent the trial court relied on several of the factors in R.C. 2151.414(E), including R.C. 2151.414(E)(1), failure to remedy conditions and R.C. 2151.414(E)(2), chronic mental illness or intellectual disability. See, *In re B.W.*, 5th Dist. Tuscarawas No. 2016 AP 09 0045, 2017-Ohio-605, ¶ 39, *appeal not allowed*, 149 Ohio St.3d 1409.

**{¶44}** The trial court noted Mother's severe mental health concerns, Mother's refusal to seek professional help directed at mitigating those problems, Mother's refusal to accept medication even though medical professionals have deemed it necessary, and Mother's constant changing of mental health professionals demonstrate Mother's significant cognitive deficits and their effect on her ability to understand her own needs and those of her child. The trial court additionally noted that Mother has lost custody of nine other children. Despite offering numerous services, Mother was unable or unwilling to mitigate the concerns that led to the child's removal.

**{¶45}** A parent's successful completion of the terms of a case plan is not dispositive on the issue of reunification. The ultimate question under R.C. 2151.414(A)(1) is whether the parent has substantially remedied the conditions that caused the child's removal. *In re Shchigelski*, 11th Dist. Geauga No. 99–G–2241, 2000 WL 1568388(Oct. 20, 2000); *In re McKenzie*, 9th Dist. Wayne No. 95CA0015, 1995 WL 608285(Oct. 18, 1995). A parent can successfully complete the terms of a case plan yet not substantially remedy the conditions that caused the children to be removed—the case plan is simply a means to a goal, but not the goal itself. Hence, the courts have held that the successful completion of case plan requirements does not preclude a grant of permanent custody to a social services agency. *In re J.L.,* 8th Dist. No. 84368, 2004–Ohio–6024, ¶ 20; *In re Mraz*, 12th Dist. Nos. CA2002–05–011, CA2002–07–014, 2002–Ohio–7278. In the case of *In re: Summerfield*, 5th Dist. Stark No. 2005CA00139, 2005-Ohio-5523, this Court found where, despite marginal compliance with some aspects of the case plan, the exact problems that led to the initial removal remained in existence, a court does not err in finding the child cannot be placed with the parent within a reasonable time.

**{¶46}** The evidence demonstrated the very little successful efforts Mother had made on the case plan. On that point, the evidence demonstrates that any improvement that Mother has made in her life is tentative and, perhaps, temporary, and that she is at risk of relapse. The trial court found that, regardless of Mother's compliance with aspects of her case plan, she was still not able to be a successful parent to this child.

**{¶47}** We find there is competent and credible evidence to support the trial court's determination that the child cannot be placed with Mother within a reasonable time or should not be placed with Mother.

**Reasonable Efforts**

{¶48} Mother further contends the trial court abused its discretion in finding SCDJFS made reasonable efforts to reunify the child with Mother.

{¶49} The Supreme Court of Ohio in In re *C.F.*, 113 Ohio St. 3d 73, 78, 862 N.E. 2d 816, 821(2007) noted,

> [N]o one section of the Revised Code addresses the concept of reasonable efforts. Overall, Ohio's child-welfare laws are designed to care for and protect children, 'whenever possible, in a family environment, separating the child from the child's parents only when necessary for the child's welfare or in the interests of public safety.' R.C. 2151. 01(A). To that end, various sections of the Revised Code refer to the agency's duty to make reasonable efforts to preserve or reunify the family unit. For example, R.C. 2151. 412 requires the agency to prepare and maintain a case plan for children in temporary custody with the goal 'to eliminate with all due speed the need for the out-of-home placement so that the child can safely return home.' Under R.C. 2151.413(D)(3)(b), an agency may not file for permanent custody under R.C. 2151. 413(D) - the '12 months out of 22 rule'- '[i]f reasonable efforts to return the child to the child's home are required under section 2151. 419' and the agency has not provided the services required by the case plan.

{¶50} A "reasonable effort" is "* * * an honest, purposeful effort, free of malice and the design to defraud or to seek an unconscionable advantage." *In re Weaver*, 79 Ohio App.3d 59, 63, 606 N.E.2d 1011(12th Dist. 1992). The issue is not whether there was

anything more the agency could have done, but whether the agency's case planning and efforts were reasonable and diligent under the circumstances of the case. *In re J.D.*, 3rd Dist. Hancock Nos. 5-10-34, 2011-Ohio-1458. The child's health and safety is paramount in determining whether reasonable efforts were made. *In re R.P.*, 5th Dist. Tuscarawas No. 2011-Ohio-5378.

**{¶51}** R.C. 2151.419 requires the trial court to determine whether the agency filing the complaint for custody "has made reasonable efforts * * * to eliminate the continued removal of the child from his home, or to make it possible for the child to return home." Subsection (B)(1) mandates the trial court to issue written findings of fact setting forth the reasonable efforts made by the agency, including a brief description of "the relevant services provided by the agency to the family of the child and why those services did not prevent the removal of the child from his home or enable the child to return home."

**{¶52}** However, even where a trial court has failed to include in its judgment entry, the findings contemplated by R.C. 2151.419(B)(1) we have found that the ultimate issue is the reasonableness of the Department's efforts, and have concluded those efforts may be determined from the record. *In the matter of Kell/Bess Children*, 5th Dist. No. 97CA0278, 1998 WL 401767(Mar. 23, 1998); *Hunt v. Ickes*, 5th Dist. Tuscarawas No. 2014 AP 08 0032, 2015-Ohio-309, ¶19

**{¶53}** We find there is competent and credible evidence to support the trial court's determination that SCDJFS efforts were reasonable and diligent under the circumstances of the case.

**{¶54}** The trial court found that neither parent has made significant progress on the case plan. The trial court noted,

The Stark County Department of Job and Family Services made numerous allowances for this family in order to allow the parents to address their mental health and parenting issues. The multiple allowances made in this case were to no avail. Multiple assessments, parenting classes, multiple team meetings, and multiple counselors were provided to this family. This court has never witnessed such a monumental attempt by Stark County Department of Job and Family Services to provide so many accommodations to one family in an attempt at successful reunification of a family.

*Findings of Fact and Conclusions of Law,* filed Dec. 6, 2021 at 47. We find that the record supports that SCDJFS was working toward the goal of reunification. We find no evidence of dishonest purpose, conscious wrongdoing, or breach of duty on the part of SCDJFS.

**{¶55}** Having reviewed the record, we find that SCDJFS made a good faith effort to reunify Mother and her child. Furthermore, the record contains clear and convincing evidence to support the court's determination that the child could not be placed with Mother.

## The Best Interest of the Child

**{¶56}** An agency that seeks permanent custody of a child bears the burden of proving by clear and convincing evidence that the grant of permanent custody is in the child's best interest. *In re B.C.,* 141 Ohio St.3d 55, 2014-Ohio-4558, 21 N.E.3d 308, ¶ 26. R.C. 2151.414(D)(1) sets out a non-exhaustive list of factors the court must consider:

**{¶57}** R.C. 2151.414(D) requires the trial court to consider all relevant factors in determining whether the child's best interests would be served by granting the permanent

custody motion. These factors include but are not limited to: (1) the interrelationship of the child with others; (2) the wishes of the child; (3) the custodial history of the child; (4) the child's need for a legally secure placement and whether such a placement can be achieved without permanent custody; and (5) whether any of the factors in divisions (E)(7) to (11) apply.

{¶58} The factors in R.C. 2151.414(E)(7) through (11), which are referred to in R.C. 2151.414(D)(1)(e), involve a parent's having been convicted of or pleaded guilty to specific criminal offenses against the child, the child's sibling or another child who lived in the parent's household; a parent's withholding medical treatment or food from the child; a parent's repeatedly placing the child at substantial risk of harm because of alcohol or drug abuse; a parent's abandoning the child; and a parent's having had parental rights as to the child's sibling involuntarily terminated.

{¶59} No one element is given greater weight or heightened significance. *In re C.F.,* 113 Ohio St.3d 73, 2007-Ohio-1104, 862 N.E.2d 816. R.C. 2151.414(D)(1) does not require a juvenile court to make specific findings regarding each best-interest factor listed in R.C. 2151.414(D)(1) or to include in its decision or judgment entry a written discussion of each of those factors. *In re: A.M.,* Slip Opinion No. 2020-Ohio-5102, 2020WL6439610 (Nov. 3, 2020), ¶33.

{¶60} A child's best interests are served by the child being placed in a permanent situation that fosters growth, stability, and security. We have frequently noted, "[t]he discretion which the juvenile court enjoys in determining whether an order of permanent custody is in the best interest of a child should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives

of the parties concerned." *In re Mauzy Children,* 5th Dist. No. 2000CA00244, 2000 WL 1700073 (Nov. 13, 2000), *citing In re Awkal,* 85 Ohio App.3d 309, 316, 642 N.E.2d 424 (8th Dist. 1994).

{¶61} The trial court rejected Mother's request to transfer custody of M.M. to her sister,

> To place [M.M.] in the legal custody of his Maternal Aunt, Jimilah Lundy would place [M.M.] in jeopardy. Attorney Waltenbaugh effectively cross-examined Jimilah Lundy. Still, it was evident from her testimony both on direct and cross-examination, Ms. Lundy does not believe Mother poses any threat to [M.M.] in spite of Mother's anger management and mental health issues. It is evident that, like Father, Ms. Lundy defers to Mother's dominant personality and it would not be in the best interest for this court to grant Ms. Lundy legal custody of [M.M.].

*Findings of Fact and Conclusions of Law,* filed Dec. 6, 2021 at 51-52.

{¶62} We conclude that the juvenile court's judgment entry demonstrate that the court complied with R.C. 2151.414(D)(1).

{¶63} Both the caseworker and the GAL testified it would be in the child's best interests to be placed in the permanent custody of the Agency. The trial court noted that M.M. was placed in the same foster home as one of his brothers. M.M. appears well adjusted and bonded in his present placement. Considering the many obstacles in Mother's life the trial court found the child's need for a legally secure placement cannot be achieved without permanent custody. Nothing in the record before us demonstrates that more time or a return of custody to the Mother will in any way benefit the child.

{¶64} In the present case, he trial court concluded the child's need for legally secure placement could not be achieved without awarding permanent custody to SCDJFS. Upon review of the record, the record supports the trial court's finding that granting the motion for permanent custody is in the child's best interest.

{¶65} In short, the juvenile court's judgment entry demonstrate that the court satisfied its statutory duty to consider the best interest factors set out in R.C. 2151.414(D)(1)(a) through (e).

## Conclusion

{¶66} For these reasons, we find that the trial court's determination that Mother had failed to remedy the issues that caused the initial removal and therefore the child could not be placed with her within a reasonable time or should not be placed with her was based upon competent credible evidence and is not against the manifest weight or sufficiency of the evidence. We further find that the trial court's decision that permanent custody to SCDJFS was in the child's best interest was based upon competent, credible evidence and is not against the manifest weight or sufficiency of the evidence.

{¶67} Because the evidence in the record supports the trial court's judgment, we overrule Appellant-Mother's two assignments of error, and affirm the decision of the Stark County Court of Common Pleas, Family Court Division.


By Gwin, P.J.,

Hoffman, J., and

Wise, John, J., concur


WSG:clw 0428